King, J.
The case of Charles A. Jones against John Jones, is a proceeding in error to reverse the judgment of the court •of common pleas. The parties in this case are brothers; and John L. Jones resides in, or near Richmond, Va., and the defendant below, Charles A. Jones, resides in this •county.
In 1884, John L. Jones recovered a judgment in the court of common pleas of this county against Charles A. Jones, for a sum of not less than $300. That judgment he does not seem to have given any attention to until it became dormant, nor until the commencement of this action in the court below,March 18,1897,to revive that judgment.
At the same time an affidavit was prepared and sworn to and filed for an attachment, and an attachment was issued, and process of garnishment was served upon the clerk of the court, and possibly upon another party who,at that time, was the judgment debtor • of Charles A. Jones. Immediately after the issuing and service of this process of garnishment, there -was a motion made to dismiss the attachment, and such proceedings were had on that motion that it was sustained some time later, and the action of the court of common pleas in dissolving- that attachment was taken to the circuit court on error, and affirmed.
While this action was pending,after filing the motion for dissolution of the attachment, the attorney of Charles A. Jones addressed to John L. Jones, this letter: (The letter is upon the letter head of N. L. Johnson, Attorney-at-law, Room 2, Johnson Block):
“Elyria, O., March 26, 1897.
“Mr. John L. Jones,
“Highland Springs, East Richmond, Va.
“Dear Sir:
“Your brother, Charles A, Jones, of this place, has just *620 obtained a judgment against one John T. Brooks, Charley has been having a hard time for years, and lately especially, has had trouble in getting what is due him. But he is anxious to settle with all his own creditors just as far aa ho possibly can out of this judgment. You will remember that you obtained a judgment against him back iu 1884, on a note originally for $150, and you will also remember-that he has paid you $125 in all, on that old note.
“Now, your brother has placed in my hands fifty dollars-for you, which I have sent to The First National Bank of Richmond, Va , payable to our order. I have sent with it a release for you to sign. By going to the bank at once- and signing the release you will receive the fifty dollars He sends you all he can, and while he regrets that it is not. more, trusts it will be satisfactory.
“ Yours very truly,
“N. L. Johnson.”
That letter was mailed to the bank with a draft for $50.. It seems that the bank sent the notice to Mr. Jones,and he-did not answer directly, and they returned the draft, together with the blank release, to Mr. Johnson,and after returning it Mr. .Jones came in and inquired for it, and they then wrote to Mr. Johnson to send it back, and he sent, back the draft and the blank release.
Then Jones came to the bank and took the release and. executed it, and then received the draft from the bank, which he had cashed, and took the money and went his; way.
Subsequently an answer was filed in this action, setting; up this release as a defense to the action. There was a reply filed to that, admitting that the release had been executed, but alleging that it had been procured by fraud and mistake.
The issues thus made up were presented to the court without the intervention of a jury, and a judgment was rendered for the plaintiff, reviving the judgment, and finding against the defendant upon the issues of the release.
*621 First, I want to observe as to the reply, that it does not allege a good cause of defense; there is no fact stated constituting a defense of that kind; nor is there any evidence* offered in support of it, showing either fraud or mistake.
No fraud is claimed, and the only mistake claimed is,, that Mr. Jones, the owner of the dormant judgment, thirteen years old, testifies that when he received the letter from N. L. Johnson, he supposed it was his lawyer.
Now, there is nothing in that letter which would lead any man to suppose that he was writing as the attorney of Mr. John L. Jones; on the contrary, the letter plainlyjndicates he is writing as the attorney of Charles Jones.
Again, it will be ordinarily assumed that a man ought to* know his own attorney,and Mr. Jones ought to have known bis; although it may be true, as he testifies, that he knew nothing about this attachment suit, and had not heard from* him, or of him, since the rendition of this judgment thirteen years before.
However that may be, it cannot fo.r an instant be supposed that Mr. N. L. Johnson could 'have known anything about the relations that existed between John and his attorney,and he may well have assumed that they were in touch, and that the principal knew what the agent was about in-commencing this action. So, when he wrote him the condition of his client, that he could not pay his debts in full^ that be had recovered a judgment — the very judgment they were seeking to attach in this action; when he wrote him he only had that as an asset, and was willing- to divide it aniong his creditors, and out of it he was willing to pay him $50 if he would give him a release of this judgment and these proceedings, it would seem Mr. Jones must have known what he meant, what he was writing about;, and we think there is not a glimmer of a mistake here, upon- the facts as testified to by this Richmond gentleman or his lawver.
*622 And that brings me thenj’to the second question, whether ■or not that was an effectual release. Upon that I do not •care to say much, except to read some of the jase in the ‘.20th Ohio Reports, 106, Harper v. Graham. There are •many cases bearing upon this question pro and con that valuable time might be spent perhaps in examination of, but none of them that more fully and completely dismisses this question than this one.
In this case,as in the one at bar, the party had recovered ■ a judgment against another who was insolvent,
There was no proof offered in this case as to the responsibility of the defendant. But I am inclined to assume, that •his brother having held a judgment against him for thirteen years that he could not, or had not collected on execution, •he must have been close to a condition of insolvency.
In the 20th Ohio,a judgment^was recovered by one party • against another who was insolvent. Afterwards the judgment creditor^agreed to receive the sum of $550 upon the judgment and the payment of attorney fees of $100, which were paid, and full receipt given for the judgment: Held,
"that a satisfaction of such judgment would, from this state of facts, be ordered to be entered. In this case the judgment was recovered in 1844, for the amount of about -eighteen hundred dollars, principal and interest and costs, by Isaac Graham against RobertjjHarper.
That judgment,it will be noticed,was recovered in Ohio, 'but the defendant at the time resided in Arkansas.
Graham procured a certified copy of this judgment, and 'forwarded it to his attorneys in Arkansas for collection.
There were thereafter propositions made for terms, and -one was agreed upon by which $550 was to be paid to apply on the judgment, and $100 was paid to Graham’s attorneys in Arkansas, and some costs made upon this certified judgment were also to be paid, aggregating an amount of ■$556,for which a receipt was given in full of the judgment, *623 which then amounted to considerable more than eighteen, hundred dollars. Now, in discussing the effect of that,. Judge Ranney, in delivering the opinion, has considerable1 to say, part of which I desire to notice.
On page 114, of this book, he says:
“It was very early settled as a rule of the common law, that the payment of less than the sum due upon a* liquidated demand, although agreed to be received in full satisfaction, could not be insisted upon s such; because' there was no valuable consideration to uphold the agreement to relinquish the balance. But if the party to whom the money was coming executed a release under seal for the same debt, he was effectually barred, although he-should have received nothing upon it. The rule and the reason were purely technical, and often fostered bad faith. The history of judicial decisions upon the subject has shown a constant effort to escape its absurdity and injustice.
“Hence, we find the supreme court of the state of New York, in the case of Kellogg v. Richards, 14 Wend., 116, holding the following language in respect to it: ‘The-rule that the payment of a less sum of money, though agreed to be received in full satisfaction of a debt exceeding that amount,shall not be so considered in contemplation' of law, rs technical, and not very well supported by reason. Courts therefore, have departed from it on slight distinctions. ’
“The supreme court of Massachusetts, in the case of' Brooks v. White, 2 Met., 285, speak rf it in no less explicit terms. They say:
“This rule which may obviously be urged in violation of good faith,is not to be extended beyond its precise import ;and-whenever the technical reason for its application does not exist,the rule itself is not to be applied. Hence, judges have been disposed to take out of its application all those cases-where' there was any new consideration, or any collateral1 benefit received by the payee which might raise a technical-1 legal consideration,although it was quite apparent that such consideration was far less than the amount of the sum due.
“A moment’s attention to the cases taken out of the rule,. *624 will show that there is nothing of principle left in the rule 'itself. One of the earliest cases is Reynolds v. Pinbowe, Cro. Eliz., 429, where, after judgment for five pounds, the plaintiff on receipt of four pounds, assumed to acknowledge satisfaction of the judgment before a given day; and this was held good upon the ground that it was a benefit to the plaintiff to receive the money without suit or charge,and to prevent a writ of error by which the defendant might have avoided the whole judgment. The authority of the case has been questioned, but I find it relied on in the very recent case of Sibner v. Tripp, 15 Mees & Welsh, 22, and conclude that it is regarded as good law in England now.
“In Pinnell’s case, 5 Co., 117, it was held that the payment of a less sum before the debt fell due,would discharge it, and this reason is given: ‘Peradventure parcel of the sum before the day it fell due, would be more beneficial to him than the whole at the day; and the value of the satisfaction is not material.’ Another case taken out, is thus alluded to in Co. Lit., 212b: ‘If the obligor pay a less sum, either before the day, or at another place than is limited by the condition, and the obligee reeeiveth it, this is a good satisfaction.’
“So in Kellogg v. Richards, before cited,it was held that the receipt of the note of a third person for less than the amount due, would be a good accord and satisfaction; and the same thing was held in the case of Brooks v. White, before cited.
“Again,it is well settled by a great number of authorities, that the receipt in satisfaction of any other article than money will be effectual, no matter how small the value as compared to the debt. Blynn v. Chester, 5 Day, 360.
“As stated by Alderson, B,,in Sibner v. Tripp, 15 Mees. & Welsh, 37: ‘If you substitute for a sum of money a piece of paper,or a stick of ceiling wax, it is different, and the bargain may be carried out in its full integrity. A man may give in satisfaction of a debt of one hundred pounds, a horse to the value of five pounds, but not five pounds.’ In this case it was held that the acceptance of the negotiable security of the debtor himself,by the creditor, was in law a satisfaction of a debt of greater amount. This «decision was made as late as 1846, and the learned judge *625 -■from whom I have quoted, ventures to intimate in respect to the whole subject that ‘the courts might well have held the contrary, and have left the matter to the agreement of the parties. ’
“We see, then,that the payment of a less sum than is due, the day before a debt falls due, will discharge it; payment at another place than is stipulated will do so; the delivery of a collateral article of any value will do so; the acceptance ■of a debtor’s note with the security, the note of a third person, or even the negotiable note of the debtor himself will •do so; and yet the payment of as much money in hand as is called for by such note, will have no such effect, although it is demonstrable that the utmost the creditor can get from such note can not exceed the amount that he gets in hand in the other case, without trouble, delay or expense. It may seem to some persons, not having a great veneration for those institutions of antiquity for which no reason can be given, that a rule so effectually undermined, •and having neither rhyme nor reason to support it, ought to be at once overruled and the whole matter placed upon the footing of reason and common sense. Especially as the exigencies of modern commerce frequently com.pel the most deserving men, with the aid of friends, to compromise their debts for less than the amount due —an operation mutually beneficial to both debtor and •creditor, as the creditor gets a part where otherwise he would lose the whole, and the debtor is ■ left free to commence again with the hope of better success.
“These considerations will necessarily arise whenever it becomes necessary to decide the general question. In this •case we aspire to nothing higher than to follow in the footsteps of the sages of the law, and hold this one of the cases ‘‘taken out’ of the rule. This money was payable at the clerk’s office in Butler-county, or to the plaintiff, residing •in the same county. It was paid in Arkansas. It is true it might be said that this was not so beneficial to the plaintiff, as though it had been paid to him in Butler county. This may be, but still it does not prevent it from being at a different place,, which is all the rule seems to require.
“Again, Harper was bound to pay the judgment, but he *626 was not bound tc pay Graham’s lawyers. He did pay them $100 in the settlement that was made, and this separately from the amount paid upon the judgment. Graham so treated it himself, for he indorsed only $550 upon the-judgment, instead of $656.50, the amount actually paid by Harper. Harper thus discharged a debt due from Graham, to his attorneys, and this was a‘collateral benefit received by Graham, which raises a technical legal consideration’ for the promise of Graham to discharge this judgment; although both sums paid, fall far short of the amount of the' judgment. ”
I have read enough to indicate what the opinion of the' court is about this question. While it may be regretted that the supreme court of Ohio did not follow out the very suggestion made here in that opinion, and have decided the' case upon the solid ground that two parties had made a binding and lawful agreement between themselves, and are' therefore to be held to it, rather than to undertake to get a reason for getting away from it; but if there was a reason in that case,there was one in this case equally good. There was a judgment in this court payable to the plaintiff1 below, and payable to the court or in the clerk’s office. It: was dormant; but an action had been brought upon it to revive it. . Ro it is also true, an attachment had been issued, and equally true a motion to dissolve it was made, and a litigation upon hand. Parties may settle their litigations,, settle their pending law suits, that is well settled.
Ro we may put our decision upon the ground of settling-a pending litigation, or put it upon the almost precise ground on which the case in Ohio was put. It was the payment of a sum of money in Richmond, Va., the plaintiff’s, own home. Either reason is sufficient to sustain this release.
The judgment in this case ought to have been for the defendant below upon that release, and against the plaintiff. For that reason we reverse the judgment; it is not supported) *627 by the facts, and contrary to law, and remand the case- for a new trial.
JSf. L. Johnson, and Ben TV. Johnson, Attorneys for Plaintiff in Error.
C, TV. Johnston and J. H. Leonard, Attorneys for Defendant in error.